IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA


THEODORE HOWARD,                )
                                )
            Plaintiff,          )
                                )
    v.                          )            1:12CV895
                                )
GE MONEY and SMITH DEBNAM       )
NARRON DRAKE SAINTSING &        )
MYERS, LLP,                     )
                                )
            Defendants.         )


## <u>MEMORANDUM OPINION AND ORDER</u>

**OSTEEN, JR., District Judge**

This matter is before the court on the Motion for Summary
Judgment ("Motion") (Doc. 26) filed by Defendants GE Money
("GECRB") and Smith Debnam Narron Drake Saints & Myers, LLP
("Smith Debnam").[1] Plaintiff Theodore Howard brought this pro se
action against Defendants alleging a violation of the Fair
Credit Reporting Act ("FCRA") and a violation of his "right to
privacy" under the FCRA. (Pro Se Complaint Form (Doc. 2) at 2;
Attach. 1, Original Complaint for Violation of the FCRA
("Compl.") (Doc. 2-1) at 2.) Plaintiff responded to the Motion
(Docs. 32, 33, 34, and 35) and Defendants replied (Doc. 36).

---

[1] Defendant GE Money states that its present name is "GE
Capital Retail Bank, FSB." (Defs.' Answer (Doc. 11) at 1.) The
court takes notice that Smith Debnam's name is actually Smith
Debnam Narron Drake Saintsing & Myers, LLP.

This matter, therefore, is ripe for adjudication and, for the reasons that follow, Defendants' Motion will be granted.

## I.  BACKGROUND

Plaintiff alleges that Defendants obtained his consumer credit report in violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. (Compl. (Doc. 2-1) at 2-3.)[2] In his Original Complaint, Plaintiff alleges that Defendants obtained his TransUnion consumer credit report in February 2012 and, as a result, are liable to him under the FCRA. (Id. ¶¶ 7-11, 20.) Plaintiff further alleged that he "never had any business dealings or any accounts with, made application for credit from, made application for employment with, applied for insurance from, or received a bona fide offer of credit from GE MONEY, SMITH DEBNAM NARRON DRAKE SAINTS [sic] & MYERS LLP" or given his consent to Defendants to acquire his credit report. (Id. ¶¶ 18-19.)

Defendants submitted two declarations, one from Jerry T. Myers, managing partner of Smith Debnam, and one from Martha

---

[2] In his Pro Se Complaint Form, Plaintiff stated the facts of his case against Defendants as: "1. Obtained consumer report (credit) without permission. 2. Not familiar with defendants. 3. Defendants violated Plaintiff [sic] right to privacy according to FCRA 15 U.S.C. § 1681." (Pro Se Complaint Form (Doc. 2) at 2.) Thus, consistent with his "Original Complaint," Plaintiff pursues a single action under the FCRA.

Koehler, an employee of GECRB, as well as supporting documents.
(Docs. 28 and 29.)  According to Koehler's Declaration and
attached documents, on or about October 22, 2001, Plaintiff
completed a Lowe's Credit Card Application.  (Koehler Decl.
(Doc. 29) at 2; Tab A (Doc. 29-1) at 2.)  The Agreement, titled
(in bold caps) "Lowe's . . . Monogram Credit Card Bank of
Georgia Credit Card Agreement," stated that it governed
Plaintiff's use of his Lowe's credit card account and was with
Monogram Credit Card Bank of Georgia ("Monogram"), its
"assignees, or other holders of this Agreement or your
[Plaintiff's] account." (Id., Tab B (Doc. 29-2) Heading and
¶ 1.)  Koehler, in her Declaration, states that Monogram later
merged with GE Capital Consumer Card Co. and changed its name to
GE Money Bank, FSB, and later changed its name to GE Capital
Retail Bank. (Id. at 2; Tab A (Doc. 29-1); see Defs.' Mem. of
Law Supp. Summ. J. (Doc. 30) at 3.) The Agreement further
provided that:

> You [Plaintiff] give us [Monogram] permission to
> request information and to make whatever inquiries we
> consider necessary and appropriate (including
> obtaining information from third parties and
> requesting consumer reports from consumer reporting
> agencies) for the purpose of . . .  reviewing or
> collecting your Account.

(Koehler Decl., Tab B (Doc. 29-2) ¶ 14.)  Plaintiff's credit
card application, purportedly bearing his signature, itself

contained a similar consent regarding reviewing or collecting his account.  (Id., Tab A (Doc. 29-1) at 2.)

Defendants, by declaration and documents, submitted evidence that Plaintiff used the credit card account and in December 2009, wrote to "GE Money Bank" regarding his credit card account.  (Id. at 7; Tab D (Doc. 29-4) at 2-3.)  Defendants also submitted a copy of a summary judgment obtained by GE Money Bank against Plaintiff in North Carolina District Court on May 7, 2013, in the amount of $3,506.93.  (Id. at 5-6; Tab C (Doc. 29-3).)  GECRB's declarant stated that, in light of her review of GECRB records and upon her knowledge of the process and procedures regarding retail credit card accounts, all contacts between GECRB and one or more credit card reporting agencies regarding Plaintiff's Lowe's account would have occurred only as follows:  (1) when the credit card application was made; (2) in response to Plaintiff's claim that the Lowe's credit card was not his; (3) during periodic credit reviews; and (4) when the account was in collection.  (Id. at 6-8.)  GECRB also made monthly reports to the credit reporting agencies. (Id.)

Both declarants attest to Smith Debnam serving as counsel to GECRB to collect on Plaintiff's past due credit card account. In addition to the state court summary judgment noted above,

which noted a Smith Debnam attorney as counsel to GE Money Bank, Defendants submitted the declaration of Smith Debnam's managing partner and practice leader of the firm's Creditors' Rights Retail practice group, Jerry T. Myers. (Myers Decl. (Doc. 28) at 1.) Myers' Declaration states that on or about May 19, 2010, his firm was hired by GE Money Bank, FSB (a predecessor to GECRB) to collect a Lowe's retail card account alleged to be owed by Plaintiff. (Id. at 2.) Myers stated that as part of its investigation for purposes of aiding in the collection of the account, Smith Debnam retrieved credit information regarding Plaintiff. (Id.) On February 3, 2011, Smith Debnam filed a complaint in North Carolina District Court on behalf of GE Money Bank against Plaintiff for the balance alleged to be due on Lowe's retail credit card account. (Id.) After a hearing at which Plaintiff appeared pro se, summary judgment was entered against Plaintiff in that case. (Id. at 3 and Ex. A.) On the same day as the entry of summary judgment, the state court granted GE Money Bank's motion to dismiss Plaintiff's appeal of his dismissed counterclaims for failure to serve a proposed record. (Id. and Ex. B.)

Plaintiff responded with general hearsay objections against the contents of Defendants' declarations and supporting documents. (See Docs. 32, 33, 34 and 35.) With respect to the

Koehler Declaration, Plaintiff presented no evidence that
GECRB's retail credit card accounts were not maintained in the
regular course of business but claimed that he received only
copies, not originals, in discovery and that his transactions
were with Lowe's and not GE Money or the other names by which it
was known.  (Pl.'s Opp'n to Martha Koehler (Doc. 35) at 2.)  He
denied that he completed and mailed a Lowe's Credit Card
application as stated in the Koehler Declaration, asserting that
Koehler's statement was hearsay and that the copy of the credit
card application provided with the Koehler Declaration was not
proper evidence as it is not a 'wet signature' original.  (<u>Id.</u>)

     Of note, Plaintiff, in responding to the Koehler
Declaration's review of occasions when GECRB would have obtained
credit reports relating to Plaintiff, replied: "The issue is
that the attorney firm pulled the credit report without
plaintiff's permission and a permissible purpose."  (<u>Id.</u> at 4.)
He makes no reference to GECRB's pulling credit reports.[3]

     In opposing the Koehler Declaration, Plaintiff does not
provide evidence challenging the successor corporation name

_____

     [3] By this statement, Plaintiff appears to concede his FCRA
claim against GECRB as he does not state any agency liability
against GECRB for the acts of Smith Debnam.  Indeed, as noted in
text, he denies that Smith Debnam is even GECRB's lawyer.  In
light of Plaintiff's arguments that he did not have a
relationship with GECRB, however, the court will address claims
against both Smith Debnam and GECRB.

changes of GECRB as described in the Koehler Declaration.  (See id. at 2-3.)  Plaintiff admits the state court lawsuit and summary judgment but asserts the amount of the award was incorrect, the judge in that case had several conflicts of interest, and judgment was wrongfully granted due to his being on narcotic medication.  (Id.; Pl.'s Opp'n to Mem. Supp. Summ. J. (Doc. 33) at 2.)

In his opposition to the Myers Declaration, Plaintiff asserted general hearsay objections and claimed Smith Debnam "refused to provide proof that they were hired by GE Money" and that his privacy rights were being invaded because "Defendant appears to be using deceptive practices, and attempting to mislead the Court."  (Pl.'s Opp'n to Declaration of Jerry T. Myers (Doc. 34) at 1-4.)  Plaintiff, however, acknowledged the lawsuit against him in North Carolina District Court, although complaining about the amount of the judgment and alleged conflicts of interest of the state court judge.  (Id. at 2-3.)

## II.  <u>LEGAL STANDARD</u>

Summary judgment is appropriate where the facts and evidence on the record demonstrate no genuine dispute as to any material fact exists and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986) (discussing the

predecessor to Rule 56(a)). The moving party bears the burden of initially demonstrating the absence of a genuine dispute of material fact. <u>Celotex</u>, 477 U.S. at 323. If the moving party has met that burden, then the non-moving party must persuade the court that a genuine dispute remains for trial. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

In considering whether a genuine dispute as to any material fact exists, the court must be careful not to weigh the evidence or make credibility determinations. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986). Instead, the court must view the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in favor of that party. <u>Id.</u> However, "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion . . . ." Fed. R. Civ. P. 56(c).

## III. <u>ANALYSIS</u>

In order to state a claim for improper use or acquisition of a consumer report under the FCRA, Plaintiff must prove the following: (1) that there was a consumer report; (2) that Defendants used or obtained it; (3) that Defendants did so without a permissible statutory purpose; and (4) that Defendants acted with the specified culpable mental state. <u>Suit v.</u>

<u>Directv, LLC</u>, Civil Action No. RDB-13-0466, 2013 WL 6817630, at *2 (D. Md. Dec. 20, 2013).  Although courts set out slightly different elements, courts uniformly include the requirement that a plaintiff prove that a defendant obtained a credit report without a permissible statutory purpose.  Defendants' Motion asserts that there is no genuine dispute as to any material fact relating to a permissible statutory purpose and that they are entitled to summary judgment as a matter of law.  Defendants also argue that Plaintiff should be estopped from claiming he did not have a credit relationship with GECRB.

### A. Plaintiff's Objections to Defendants' Declarations and Exhibits

As a preliminary matter, the court notes that Plaintiff proceeds pro se.  "Appearing pro se does not relieve a litigant of his obligation to follow legitimate rules."  <u>United States v. Beckton</u>, 740 F.3d 303, 306 n.* (4th Cir.), <u>cert. denied</u>, ____ U.S. ____, 134 S. Ct. 2323 (2014).  In addition to a general

response to Defendants' summary judgment motion (Doc. 32)[4] and an

opposition to Defendants' memorandum in support (Doc. 33),

Plaintiff filed two additional documents (Docs. 34 and 35), both

"[p]ursuant to Rule 56(c)(4)" in opposition to the declarations

filed in support of Defendants' Motion.  Plaintiff's objections

address each of Defendants' declarations paragraph by paragraph,

admitting or denying each paragraph and at times providing

further explanation.  Both oppositions are signed by Plaintiff

under penalty of perjury pursuant to 28 U.S.C. § 1746.  The

court will consider these oppositions (Docs. 34 and 35) as

declarations in support of Plaintiff's response.

Plaintiff's response and oppositions assert that

significant parts of Defendants' declarations and supporting

materials are hearsay.  To be sure, "[h]earsay evidence, which

is inadmissible at trial, cannot be considered on a motion for

---

[4] Plaintiff's response largely chastises Defendants for
filing a frivolous motion for summary judgment and accuses
Defendants' lawyers for failing "to follow the simple guidelines
set out in the NCRCP and Rules of the Judicial Administration."
(Pl.'s Opp'n to Summ. J. (Doc. 32) at 1.)  Plaintiff's
invocation of "NCRCP" appears to refer to the North Carolina
Rules of Civil Procedure.  Based on Plaintiff's reference to a
case, uncited but by the court's determination a Florida
District Court of Appeals opinion, the "Rules of the Judicial
Administration" appear to refer to the Florida Rules of Judicial
Administration.  Plaintiff chose to file this action, based
primarily if not exclusively on federal law, in federal court.
Defendants' attorneys are bound in this action by neither the
North Carolina Rules of Civil Procedure nor the Florida Rules of
Judicial Administration.

summary judgment." Md. Highways Contractors Ass'n v. State of Md., 933 F.2d 1246, 1251 (4th Cir. 1991). With respect to affidavits and declarations, Rule 56(c)(4) requires that they "set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Here, the declarations submitted by Defendants, under penalty of perjury, are based on first-hand knowledge directly or from a review of the records or are based on the declarants' familiarity with the policies and procedures of, and records maintained by, the respective Defendants. See Harris v. NCO Fin. Sys., Civil Action No. No. RDB-13-0259, 2013 WL 6858852, at *2 n.5 (D. Md. Dec. 23, 2013) (noting in FCRA case, "the Plaintiff's hearsay arguments do not apply. The affidavits are based on personal knowledge gained by a review of the relevant records. It is of no moment that the affiants did not state whether they worked for their respective companies during the time that the Plaintiff's credit reports were obtained.").

With respect to documents submitted by Defendants, a well-recognized exception to the hearsay rule is records of a regularly conducted activity. Pursuant to Federal Rule of Evidence 803(6), a record of an act or event is not excluded as hearsay if, as relevant here, (A) the record was made at or near

the time by, or from information transmitted by, someone with knowledge, (B) the record was kept in the course of a regularly conducted activity of a business, (C) the making of the record was a regular practice of that activity, (D) conditions (A)-(C) are shown by the testimony of the custodian or another qualified witness, and (E) neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness.  Fed. R. Evid. 803(6).[5]  Defendants' declarations comply with Rule 803(6)(A)-(D).  (See Myers Decl. (Doc. 28) ¶¶ 1, 3-4; Koehler Decl. (Doc. 29) ¶¶ 1-5.)  As to the fifth requirement (subpart (E)), there is no apparent lack of

---

[5] Plaintiff references and appears to quote, in part, an uncited case "Mitchell v. Westfield."  The court concludes that this case is Mitchell Bros., Inc. v. Westfield Ins. Co., 24 So.3d 1269 (Fla. App. 1st Dist. 2009) (per curiam).  Although decided under Florida law, Mitchell supports the court's conclusion.  In Mitchell, unlike here, the party submitting documents had failed to establish that the documents were admissible business records and had failed to introduce any other admissible evidence.  See Mitchell, 24 So.3d at 1269.

trustworthiness despite Plaintiff's general objections.[6]

Further, Plaintiff's own admissions and the North Carolina state

court proceedings between Plaintiff and GECRB are in accord with

Defendants' declarations and submitted documents, thereby

supporting the conclusion that neither the source of information

nor the method or circumstances of preparation indicate a lack

of trustworthiness.  See Harris, 2013 WL 6858852, at *2 n.5

("Finally, the Plaintiff's account statements presented by the

Defendants would be admissible as business records under Federal

Rule of Evidence 803(6)."). To the extent Plaintiff challenges

the form of material submitted by Defendants, he has not raised

an issue indicating that the material cannot be presented in a

form that would be admissible in evidence.  See Fed. R. Civ. P.

56(c)(2).

---

[6] Although not part of the court's analysis, the court notes
that absent contrary Congressional action, after December 1,
2014, Subpart (E) of Rule 803(6) will provide (emphasis added)
that: "the opponent does not show that the source of information
or the method or circumstances of preparation indicate a lack of
trustworthiness."  This amendment is to "clarify that if the
proponent has established the stated requirements of the
exception [i.e., subparts (A) through (D)] . . . then the burden
is on the opponent . . . . [and] [w]hile most courts have
imposed that burden on the opponent, some have not.  It is
appropriate to impose this burden on [the] opponent, as the
basic admissibility requirements are sufficient to establish a
presumption that the record is reliable."  Fed. R. Evid. 803
cmt. 2014 amendments.

**B. No Genuine Dispute Exists as to any Material Fact**

Defendants have satisfied their burden of showing that there is no genuine dispute of any material fact remaining for trial. The court has viewed the facts in the light most favorable to Plaintiff, the non-moving party, drawing all reasonable inferences in his favor. However, the court finds that Plaintiff has not adequately supported his assertions that facts material to consideration of the grounds for summary judgment are subject to a genuine dispute.

As set out in the Background section above, Defendants provided evidence that Plaintiff entered into an agreement with Monogram for a Lowe's credit card. After a merger, Monogram changed its name to GE Money Bank, FSB, the same entity which retained Smith Debnam for litigation against Plaintiff in state court to recover on Plaintiff's account and with whom Plaintiff corresponded regarding his credit card debt.

Plaintiff, as the non-moving party, has failed to persuade the court that a genuine dispute remains for trial. Plaintiff argues that the Lowe's card was not obtained by him and that therefore any debt owing is not chargeable to him (this argument is discerned through Plaintiff's constant requests to see the 'wet signature' version of the contract). The court finds, however, that Plaintiff has failed to raise a genuine dispute as

to whether Plaintiff entered into an agreement for a Lowe's credit card. Plaintiff's admitted involvement in the state court action against him and claims that summary judgment against him in that action had the wrong amount (and a conflicted judge) acknowledges the existence of the credit relationship itself.[7] Further, Plaintiff himself admits that he attempted to pay on the credit card. (Pl.'s Opp'n to Mem. Supp. Summ. J. (Doc. 33) at 3.) Plaintiff's correspondence with GECRB (at the time named GE Money Bank, FSB) regarding his credit card account and the other evidence relating to that account noted above, demonstrates that Plaintiff cannot and does not create any genuine issue as to whether he was a party to the Lowe's credit card account.[8]

Plaintiff also fails to raise a genuine dispute as to whether GECRB is the true owner of any debt owed or that he no longer had a relationship with GECRB because he was not permitted to "opt-out" at the time of any name change. He has

---

[7] In his opposition to the Koehler Declaration, Plaintiff states: "The summary judgment in state court was wrongfully granted. The amount is incorrect. The attorney deceived the court with stating that the amount was one sum when the amount is different. Also, there were several conflicts of interest with the Judge and the Plaintiff of which will be reported." (Pl.'s Opp'n to Martha Koehler (Doc. 35) at 4.)

[8] There is no question that the record establishes that the credit card was listed in Plaintiff's name.

presented no evidence nor cited a statute or regulation providing that he was entitled to opt-out (of what, he does not say) when GECRB merged with another company and changed its name. Indeed, the Agreement specifically notes that it applies to assignees of Monogram or other holders of Plaintiff's agreement or account. In this case, the uncontroverted evidence is that GECRB is not even an assignee but is a direct successor of Monogram.

In reply to the reviews by GECRB's employee of what contacts were made between GECRB and credit reporting agencies, Plaintiff responded with a denial based on his claim that "[t]he issue is that the attorney firm pulled the credit report without plaintiff's permission and a permissible purpose." (Pl.'s Opp'n to Martha Koehler (Doc. 35) at 4.) What is clear is that Plaintiff has not provided any evidence to contradict GECRB's evidence of proper use of credit reporting agencies with respect to Plaintiff's account.

Finally, Plaintiff fails to raise a genuine dispute regarding the Smith Debnam representation of GECRB in a collection action against Plaintiff. Indeed, Plaintiff does not provide even a scintilla of evidence against this claim and merely denies it. (See Pl.'s Opp'n to Declaration of Jerry T. Myers (Doc. 34) at 2). This is not surprising in light of the

unrebutted Defendants' declarations and Plaintiff's admissions
with respect to the state lawsuit against him.  Thus, there is
no genuine dispute that Smith Debnam acted as attorney for GECRB
in its efforts to collect on the Plaintiff's credit card
account.

The court has considered Plaintiff's other arguments and
evidence and finds them to be irrelevant or without merit.
Where, as here, the established record so blatantly contradicts
one party's version of events, such that no reasonable jury
could adopt that party's story, the court is not required to
"adopt that version of the facts for purposes of ruling on a
motion for summary judgment."  See Scott v. Harris, 550 U.S.
372, 380 (2007).  This court finds that Plaintiff has failed to
persuade the court that a genuine dispute remains for trial.

### C.   Defendants are Entitled to Summary Judgment as a Matter of Law

The court may grant a motion for summary judgment only when
a defendant shows it is entitled to summary judgment as a matter
of law.  Fed. R. Civ. P. 56(a).  The Fair Credit Reporting Act,
15 U.S.C. § 1681 et seq., provides that consumer credit reports
may not be obtained without a "permissible purpose" as defined
in 15 U.S.C. § 1681b.  15 U.S.C. § 1681b(f).  Such permissible

purposes include receiving a consumer credit report by a person who:

>    (A)  intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer; or
>
>    . . . .
>
>    (F)  otherwise has a legitimate business need for the information –
>
>>    (i)  in connection with a business transaction that is initiated by the consumer; or
>>
>>    (ii) to review an account to determine whether the consumer continues to meet the terms of the account.

15 U.S.C. § 1681b(a)(3).  Where a company "willfully or negligently fails to comply with any requirement imposed under the Act," the FCRA imposes civil liability.  Ausherman v. Bank of America Corp., 352 F.3d 896, 899-900 (4th Cir. 2003) (citing 15 U.S.C. §§ 1681n, 1681o).  However, a consumer credit report may be obtained where the user has only a "reason to believe" that their purpose in obtaining the report was permissible. Korotki v. Attorney Servs. Corp., Inc., 931 F. Supp. 1269, 1276 (D. Md. 1996).

In light of the facts for which there is no genuine dispute, the legal analysis is straightforward.  Both Defendants are entitled to summary judgment as a matter of law.  First,

GECRB is entitled to summary judgment under 15 U.S.C.
§ 1681b(a)(3)(A). As holder of a debt resulting from
Plaintiff's use of the Lowe's credit card, GECRB could
permissibly access Plaintiff's credit report (and other credit
information) not only in connection with the extension of credit
to Plaintiff but also with respect to the review or collection
of an account of Plaintiff. 15 U.S.C. § 1681b(a)(3)(A).[9]
Because the court finds that GECRB is entitled to summary
judgment as a matter of law pursuant to Section 1681b(a)(3)(A),
it need not consider whether a permissible purpose also exists
under Section 1681b(a)(3)(F).

With respect to Plaintiff's claims against Smith Debnam,
the court concludes that GECRB's retained law firm is also
entitled to summary judgment as a matter of law. Because GECRB
had a permissible purpose to review Plaintiff's credit report

---

[9] The court notes that Plaintiff also expressly agreed he
authorized Monogram (and its assignees and subsequent holders of
the agreement or account) to make "inquiries you consider
necessary (including requesting reports from consumer reporting
agencies and other sources) in evaluating my application, and
subsequently, for purposes of reviewing, maintaining or
collecting my account." (Koehler Decl. (Doc. 29) at 3; Tab A
(Doc. 29-1) at 2; Tab B (Doc. 29-2) ¶ 14.) Thus, not only was
GECRB's review of Plaintiff's credit reports in this case a
permitted purpose under Section 1681b(a)(3)(A), Plaintiff also
consented to such reviews.

for purposes of "collection of an account" under Section

1681b(a)(3)(A), so did Smith Debnam:

> An attorney collecting a debt for a creditor client,
> including a party suing on a debt or collecting on
> behalf of a judgment creditor or lien creditor, has a
> permissible purpose to obtain a consumer report on the
> debtor to the same extent as the client.

Korotki, 931 F. Supp. at 1277;[10] see Fritz v. Capital Mgmt.

Servs., LP, No. 2:12-cv-1725, 2013 WL 4648370, at *3 (W.D. Pa.

Aug. 29, 2013) ("Relying on the 'collection of an account'

language in § 1681b(a)(3)(A), courts . . . appear to be uniform

in their agreement that a debt collector is permitted to obtain

a consumer credit report for the purpose of collecting an

outstanding debt." (citing cases)); Boston v. Client Servs. of

---

[10] Plaintiff describes Korotki as an "old case" decided prior to amendments by the FTC in 1997 and that Defendants are committing fraud on this court. (Pl.'s Opp'n to Mem. Supp. Summ. J. (Doc. 33) at 4.) Plaintiff does not, however, explain how any amendment affected the language quoted in text. Further, a review of the exhibit attached to Plaintiff's response indicates that the reference was to a 1997 amendment to the FCRA itself. Plaintiff fails to point to the change or discuss how it applies to this case. The court notes, however, that in 1997 the permissible purpose language in Section 1681b(a)(3)(E) (now (F)) changed from when a creditor had a legitimate business need for the information "in connection with a business transaction involving the consumer" to "in connection with a business transaction that is initiated by the consumer" (emphases added). Pub. L. No. 104-208, § 2403, 110 Stat. 3009 (1996). This part of the amendment does not affect the court's analysis. Further, the court finds as a matter of law Defendants' actions were authorized by Section 1681b(a)(3)(A) and did not need to consider Section 1681b(a)(3)(F).

Mo., Inc., No. 3:13CV184, 2013 WL 5925902, at *2 (W.D.N.C.

Nov. 1, 2013) (noting, in granting a motion to dismiss, that

"[a] debt collector is permitted to obtain a consumer report if

the agency is doing so for the purposes of collecting a debt").

Here, there is no genuine dispute that Smith Debnam was hired to

pursue an alleged debt against Plaintiff and thus had a

permissible purpose under Section 1681b(a)(3)(A), that is, in

connection with the collection of an account resulting from a

credit transaction.[11]

---

[11] Although Plaintiff's Complaint specifically alleges only a 2012 access to his credit report by Defendants (Compl. (Doc. 2-1) ¶ 9), one of his supporting documents indicates that on May 24, 2010, and on November 20, 2008, a company identified as "Smith Debnam Narron Wych" obtained Plaintiff's credit history from Experian. (Pl.'s Opp'n to Mem. Supp. Summ. J., Ex. A (Doc. 33-1).)  The May 24, 2010 report clearly relates to the collection process which led to the state court litigation because Smith Debnam was retained in that case on or about May 19, 2010.  (See Myers Decl. (Doc. 28) at 2.)  The November 20, 2008 report, which was referenced generally but not specifically by Plaintiff in his opposition, would appear somewhat problematic.  The court notes, however, that in a January 19, 2009 letter supplied by Plaintiff, he stated that he had "recently reviewed [his Experian] credit report very carefully" and "noticed that there are some accounts showing on my report that [do] not belong to [him]." (Pl.'s Opp'n to Mem. Supp. Summ. J., Ex. C (Doc. 33-3).)  From Plaintiff's own documents, it is clear that Plaintiff would have been on notice of the November 20, 2008 inquiry by the time of his January 19, 2009 letter at the latest.  This date is more than two years before the filing of this lawsuit and therefore any claim related to the 2008 inquiry would likely have been objected to by Defendants as time-barred had it been set out in the Complaint.  See 15 U.S.C. § 1681p.

IV.  **CONCLUSION**

For the reasons set forth herein, **IT IS HEREBY ORDERED** that
Defendants' Motion for Summary Judgment (Doc. 26) is **GRANTED** and
that this action is **DISMISSED**.  A Judgment dismissing this
action will be entered contemporaneously with this Memorandum
Opinion and Order.

This the 2nd day of December, 2014.

_____
United States District Judge